Cateon, J.
delivered the opinion of the court.
The bill of exceptions shows, that much stress, on the trial, was laid upon the blow given by Broach to Grain-ger, to reduce the killing to manslaughter; that Grain-ger’s passions had not cooled. He never had any passion; he was much alarmed and with good cause. Aman was on his horse behind him; he could not get away. Henson proves he did not pretend to prevent Broach from whipping Grainger, who believed, and most probably rightfully, that Henson was in “cahoot” with Broach. It was Henson’s duty to have protected Grainger, or got off from behind him, and left him free to escape from Broach.
Grainger used all the means in his power to escape from an overbearing bully. He was shuddering with fear, and his last hope of protection was defeated when Rai-ney’s door continued closed against him, and Rainey did not come to his relief. He shot only to protect his person from threatened violence, and that great. It was certain. Henson sat quietly on the fence; the women and Rainey did not open the door; they were, no doubt, afraid of Broach, who displayed the traits of a reckless bully, and would have attacked Grainger the moment he reached him, as well in the house as out of it. It behooved *462 Rainey not to permit the attack in a cabin, amongst wo-J , ^ . , , TT , , ° men and children, m the dark. He did right not to open the door. From Henson no assistance could be hoped the women saw him quietly sitting on the fence, which when Broach crossed, he helped himself over, by putting his hand on the shoulder of Henson. These are the facts as presented by the record before us.
Was there malice prepense in this case of homicide, so as to exclude the benefit of clergy, within the 23 Henry VIII, ch. 1? Did Grainger display a cold, deliberate and wicked conduct? A heart lost to all social order and fatally bent on mischief? It cannot be believed. He behaved like a timid, cowardly man, was much alarmed, in imminent danger of a violent and instant assault and battery, and was cut off from the chances of probable assistance. That the act was the result of fear, hardly admits of doubt. It is equally certain to our minds, that Broach only designed to commit a trespass and battery upon the body of Grainger, without intending to kill him. If the jury had believed that Grainger was in danger of great bodily harm from Broach, or thought himself so, then the killing would have been in self defence. But if he thought Broach intended to commit a battery upon him, less violent, to prevent which he killed Broach, it was manslaughter. 1 Hawk. P. C. ch. 28, sec. 23: 1 East C. L. 272. The judgment will be reversed, and the cause remanded for another trial.
Judgment reversed.